## CRUTCHFIELD'S HEIRS AND ADM'R vs. HUDSON.

1. Where a deed of trust, conveying both real and personal property, is found fraudulent and void because made to hinder and delay the grantor's creditors, in a claim suit under the statute between a judgment creditor of the grantor and a purchaser under the deed, the claimant is not concluded by that verdict and judgment, as to the *bona fides* of the deed, in a suit subsequently brought against him by a purchaser at sheriff's sale under the same judgment, to recover the lands conveyed by the deed, which defendant bought at the trustee's sale under the deed; and the record of the former suit is not admissible evidence against the defendant in the latter case.

2. A creditor who receives his *pro rata* share of the proceeds of sale under a deed of trust, is not thereby estopped from attacking the deed for fraud.

3. When the defendant in an action of ejectment dies, pending the suit, it should be revived in the names of his heirs at law and personal representatives.

ERROR to the Circuit Court of Talladega.

Tried before the Hon. ROBERT DOUGHERTY.

EJECTMENT by Samuel P. Hudson, the defendant in error, against Thomas Crutchfield, for certain lots situated in the town of Jacksonville in Benton County. The venue was changed, at the instance of the defendant, to Talladega.

The tenant in possession, upon whom the notice was served, was one John Ramey. Crutchfield appeared, and asked to be made a party as Ramey's landlord, and the tenant's name was dropped in the future progress of the suit. Crutchfield died before the trial, and the suit was revived against his heirs at law and administrator, the latter objecting to the revival of the suit against him.

On the trial, the plaintiff adduced evidence showing that the *locus in quo* was sold by the sheriff of Benton County, under an execution issued on a judgment of the Circuit Court of Benton, rendered on the 25th of October, 1839, for $2500, besides costs, in favor of Choice, Harbin & Co. against Aaron Haynes; that he became the purchaser at this sale, and received the sheriff's deed, which he produced; and that defendant, by his

47

tenant, was in possession of the lots. This sale took place in '46.

The defendants then proved that said Haynes, on the 15th of October, 1839, executed a deed of trust, conveying the *locus in quo*, with other real and personal property, to one M. M. Houston, as trustee, to secure the payment of certain debts due to Thomas Crutchfield and other creditors; that said Hudson was one of the creditors secured in the deed, his debt being a store account; that said deed was properly recorded, and that a sale was made by the trustee, pursuant to its provisions, of the land in controversy, at which sale Crutchfield became the purchaser, and received the trustee's deed; which was produced, dated February 1, 1841; and that Hudson received his *pro rata* share of the proceeds of this sale.

The plaintiff then proved that the note on which Choice, Harbin & Co. recovered judgment against Haynes, was made in August, 1837, and that the suit on it was commenced in February, 1839; that a *pluries fi. fa.* issued on this judgment in 1847, and was levied by the sheriff of Benton County on several articles of personal property embraced in said deed of trust from Haynes to Houston; that Crutchfield, the defendant in this suit, interposed a claim to the property under the statute; that a trial was had of this claim suit, between Choice, Harbin & Co. and Crutchfield, and that the property was found subject to plaintiffs' execution, and judgment was thereupon rendered condemning the property, and awarding costs against the claimant; that upon this trial, the plaintiffs in execution adduced evidence to show that said deed of trust was fraudulent and void, as having been made with intent to hinder, delay and defraud creditors, that the question of fraud *vel non* was distinctly made and submitted to the jury on that trial, and that the jury found the property subject to the plaintiffs' execution on the ground that said deed of trust was fraudulent and void, as having been made to hinder and delay the grantor's creditors; that the sale of said personal property was made at the same time the land in this suit was sold, viz., February 1, 1841; and that Hudson, the plaintiff in this suit, was not a witness on that trial.

The defendants objected to this proof relative to the claim suit, as being irrelevant; but the court admitted it, and defendants excepted.

Upon this evidence, the court charged the jury, that, if they believed the evidence, the verdict and judgment rendered in the claim suit between Choice, Harbin & Co. and Crutchfield, was conclusive evidence, in favor of Hudson, of the invalidity of the deed of trust from Haynes to Houston, as against the heirs and representatives of Thomos Crutchfield in this action ; to which defendants excepted.

The several rulings of the court excepted to as aforesaid, and the charge given, are assigned for error.

JOHN T. MORGAN and G. C. WHATLEY, for plaintiffs in error :

1. The judgment in the suit between Choice, Harbin & Co. and Crutchfield was not evidence, for any purpose, in this suit, because the record of that judgment would not conclude Hudson, if offered in evidence against him. In such cases, there must be mutuality. It is a question of estoppel merely ; and Hudson, not being concluded by that record, could not set it up as evidence in his favor. The record does not show that Hudson had any other connection with the case, than that he purchased under the Choice, Harbin & Co. judgment, under which they condemned the personal property.—Stephen's Nisi Prius 1663 ; McLelland v. Ridgeway, 12 Ala. 482.

2. Suppose Hudson had been offered as a witness for Choice, Harbin & Co., on the trial of the right of property. Would he have been incompetent, because he held the title to property which he had previously purchased under the same execution ? If so, any other creditor of Haynes would have been incompetent, for he would have had an equal interest in setting aside the deed for fraud.

3. If the judgment of Choice, Harbin & Co. is conclusive in favor of Hudson, on the ground of privity, it must be conclusive for all purposes, and would exclude all denial of his title by Crutchfield. If the judgment is not conclusive of every question in the case, it can only be pleaded as an estoppel in the nature of an estoppel *in pais*, and is a part of the evidence to support the plea, thus destroying its own conclusive character.

4. There is no privity between Choice, Harbin & Co. and Hudson. It is not privity of estate, for the estate is different, and purchased at a different time and under different process,

but upon the same judgment. If Choice, Harbin & Co. had failed in their suit, for any cause, would Hudson have been estopped ?—Allen's Heirs v. Hall's Heirs, 1 Marsh. Ky. R. 525. Hudson had his title before the trial of the case between Choice, Harbin & Co. and Crutchfield.

5. Hudson was one of the creditors provided for in the deed, which he now insists was fraudulent, and accepted his *pro rata* share of the proceeds of the very sale at which Crutchfield bought the lots now sued for. If he had knowledge of the fraud in the deed, and acted upon it, and was a party to the fraud, even by an act of ratification, he would be estopped from setting up his title against Crutchfield, who was the purchaser at the sale.

6. It was fraud *in the deed* which was insisted on in this case as an estoppel, for the verdict in the claim suit was based solely upon that idea; fraud *in the purchase* made by Crutchfield was not pretended. Crutchfield and Hudson were both parties to the deed, and both accepted its provisions. If it was fraudulent, so as to be set aside by the judgment of a court, both Hudson and Crutchfield must have participated in the fraud; and Hudson, having acquiesced in Crutchfield's purchase, and having taken his portion of the proceeds of the sale, would be himself estopped from setting up the fraud in the deed. This evidence was before the jury, without exception, in the court below, and the charge effectually excluded it from their consideration. The charge is, that, if the jury believe the evidence, the verdict and judgment in the claim suit was conclusive evidence of the validity of the deed, in favor of Hudson in this action, as against the heirs and representatives of Crutchfield.

7. The personal representatives of Crutchfield could not be joined with his heirs at law, as defendants in this action. The test is, whether the judgment against them would have been *de bonis propriis, aut intestatis.* If they had been sued jointly in the first instance, it would have been a misjoinder, and the case is not altered by the revival of the suit against them. The administrators of Crutchfield are not shown to have had possession of the land when the suit was revived. Ramey was tenant in possession when the suit was brought, and Crutchfield was admitted to defend as his landlord; and if Crutchfield thus undertook to pay the damages, in the place of his tenant, the admin-

istrators would not be bound by the undertaking in this form of action.—See 7 Ala. 459.

S. F. RICE, for the defendant in error :

1. In this suit, Hudson, as a purchaser of the land at sheriff's sale, must be regarded in two distinct points of view, and as clothed with two distinct classes of rights and immunities ; I. As a purchaser from the time he became such, and entitled to all the rights and immunities pertaining to him as such purchaser. II. As standing in the situation of Choice, Harbin & Co., the judgment creditors, and entitled to all the rights and immunities to which they would be entitled, if they had been the purchasers of the land, instead of Hudson, and the plaintiffs in this action of ejectment, instead of Hudson.—Avent v. Read, 2 Stewart's Rep. 488 ; Daniel v. Sorrells, 9 Ala. Rep. 436.

2. Hudson must be regarded as a privy of Choice, Harbin & Co., so far as beneficial to him ; and the heirs and representatives of Thomas Crutchfield, deceased, who was the defendant in this action, are clearly concluded by any thing which would have concluded him, if he had not died during the pendency of this suit. In other words, it is the right of Hudson to demand of every court to give him, in this suit, the benefit of every matter which could have been given to Choice, Harbin & Co., if they, instead of Hudson, had been the purchasers of the land under their judgment, and thereupon had brought this action against Crutchfield.—Wood v. Jackson, 8 Wend Rep. 36.

3. The verdict and judgment rendered on the trial of the right of property against said Crutchfield, claimant, having turned upon the ground that the jury believed the deed of trust fraudulent, which in that case was relied on by said Crutchfield, the claimant, and which in that case was assailed for fraud by said Choice, Harbin & Co., the plaintiffs in execution, must in this suit be regarded as conclusive evidence of the invalidity of said deed of trust.—Gardner v. Buckbee, 3 Cowen's Rep. 120 ; Strutt v. Bovington, 5 Esp. Rep. 58 ; Burt v. Sternberg, 4 ib. 559 ; Adams v. Barnes, 17 Mass. Rep. 365 ; Rakes v. Pope, 7 Ala. Rep. 161 ; McCrary v. Remson, 19 Ala. Rep. 431 ; Saint v. Ledyard, 14 Ala. Rep. 244 ; Betts v. Starr, 5 Conn. Rep. 550 ; Landreth v. Landreth, 12 Ala. Rep. 640 ; Davis

v. Davis, 10 Ala. Rep. 299 ; 3 Phillips on Ev. 827, 828, 960, 961.

4. On the death of said Crutchfield, the defendant, it was proper to revive the action against his heirs and representatives, especially under our statutes, which authorize the representatives to rent out the lands of the intestate, and by necessary implication confer upon him the right to the possession, in order that he may rent it and deliver possession to the person renting it. The administrator is the proper party to* pay the damages.—Abercrombie *et al.* v. Jordan, 15 Ala. Rep. 580 ; Rowland v. Ladiga, 21 Ala. Rep. 9.

5. But, even if there was error or irregularity in this, or in entering the final judgment, this is no ground for reversal in this court :—The administrator alone objected to the revival— he did not pretend that he did not have possession of the property in controversy, either by him or his tenant. And after he excepted, he, as well as the heirs at law, " proceeded to a trial of the cause, and to make up the issue to try the titles to the lots of land and premises described in the declaration." The administrator and heirs having thus made up the issue, and having had a fair trial by jury, how can either of them be heard to complain of injury ? What more were they or any of them entitled to ? If there was error, it was in allowing them and each of them rather more than, perhaps, they were entitled to. By the course they took, they waived their right to object here ; and even if they can object here, it is mere error without injury. In ejectment, there is no special pleading. The issue is as to the titles ; and there would seem to be no sort of objection to allowing administrator and heirs to defend in such case.— Jackson v. Wood, 8 Wend. R. 9.

6. But, as all the parties are before the court, and as the title and damages have been settled by a verdict, rendered on an issue made up by all the parties, and tried by a jury selected by all the parties, it is clear this court will not reverse upon the objection of the administrator or heirs that no judgment should have been rendered against the administrator. If there is any irregularity in this, the Supreme Court will amend the judgment, at the cost of the plaintiffs in error.—Loomis v. Allen, 7 Ala. Rep. 706.

7. Ejectment, in this State, performs the double office of

ejectment and the action of trespass for mesne profits.—1 Chitty's Pl. 193, 194. And if the administrator could, in the action of trespass for mesne profits, be made liable for the damages, how is he injured by having that liability enforced in the present suit? He is actually benefited, because he is here relieved from the costs, the heirs being liable for the costs. He is complaining here of a benefit.—Alford v. Samuel, 8 Ala. Rep. 95; 1 Chitty's Pl. 193.

8. The fact that Hudson was a beneficiary in the deed of trust, and received a *pro rata* share under it, cannot affect the result of this case: I. Because Choice, Harbin & Co. would not have been affected by that fact, if they had been the purchasers under their judgment, instead of Hudson, and therefore Hudson cannot be affected by it. II. That fact, at most, would only amount to an estoppel *in pais*, and such estoppel cannot be made available in an action of ejectment, in a court of law.— McPherson v. Walters, 16 Ala. R. 714. III. No question as to that fact, or its effect, is presented by the record, or subject to revision in this court. The charge of the court does not raise the question, nor does the objection to the evidence in a mass raise it.

9. When a deed of trust embraces real and personal property, if it is void as to the personal property, for the fraud of the grantor and grantee, it is void as to the realty also, especially in a court of law.—Hunter & Thomas v. Tatum, 14 Ala. Rep. 557.

PHELAN, J.—The *bona fides* of the deed in trust from Haynes to Houston, as trustee, made to secure Crutchfield and others, and under which he and his representatives claim in this action of ejectment, was directly put in issue in the trial of the right of property, which previously took place between Crutchfield, as claimant, and Choice, Harbin & Co., as plaintiffs in execution, who levied on certain slaves embraced in the same deed in trust, as the property of Haynes, their debtor. The deed was ·prior in point of date to their judgment against Haynes, but they levied on the slaves, notwithstanding, alleging that the deed was fraudulent, as having been made "with intent to hinder, delay and defraud creditors." Crutchfield and Choice, Harbin & Co. came to trial on this issue, and it was

found in favor of the latter, and the slaves were condemned to the satisfaction of their judgment. As between these parties, then, the question as to the *bona fides* of this deed in trust is *res adjudicata,* and the decision has been that it is void for fraud.

Afterwards Hudson, who purchased at the same sheriff's sale under the Choice, Harbin & Co. judgment a house and lot in Jacksonville, which was embraced in this same deed in trust, and which Crutchfield had bought at the trustee's sale previously, brought this action of ejectment, to recover the premises of Crutchfield.

The main question now presented for our decision is this : Is Crutchfield, in this action with Hudson about the land, concluded as to the *bona fides* of the deed in trust under which he claims, by the verdict and judgment rendered in the suit with Choice, Harbin & Co. about the slaves ?

This must wholly depend upon the answer to another question : Was Hudson a party to that suit, or a privy to those who were parties ? for no principle can be better settled than that no man shall be concluded by a trial and judgment to which he was not either a party or a privy ; in which he had not the opportunity, either in person or by proxy, to prosecute or defend his rights.—McClelland v. Ridgeway, 12 Ala. 482.

It is plain he was not a party. Was he a privy to those who were opposing parties to Crutchfield, namely, Choice, Harbin & Co ?

To be a privy to another, a man must claim by or under that other, by blood, as heir, by representation, as executor, or by contract, as vendee, assignee, and the like ; and a privy must come after him to whom he is privy, and never precedes.—2 Thomas' Coke 506

In respect then to the title to this house and lot, do we find that Hudson comes after Choice, Harbin & Co., and claiming under them, either by blood, representation or contract ?

It is argued that he does ; that he purchased the premises at a sheriff's sale under their judgment. But this is not a purchase from them. Hudson is not the vendee of the judgment creditor, but of the judgment debtor. The sheriff, by his deed, conveys to the purchaser all the right and title of the defendant to the judgment—of Haynes, and not of Choice, Harbin &

Co. If sued for the land, in privity with whom would he defend? With Haynes, of course. Haynes' title would be his title by his purchase at the sheriff's sale.

But does he not succeed to all the rights of the judgment creditor existing at the rendition of the judgment? and if the judgment of Choice, Harbin & Co. then rightfully bound the land notwithstanding the deed in trust, would not the purchaser, solely by virtue of that, hold it in spite of the deed in trust?— That is undoubtedly so, but it amounts to nothing towards establishing the proposition, that the purchaser would hold the land as privy of Choice, Harbin & Co., the judgment creditors. The right of the judgment creditors to have the land sold for the satisfaction of their judgment, exists in full force, because, as it is alleged, the deed in trust, though prior in point of date, is void for fraud, as against them. But what is it that is sold? what is it that the purchaser gets? The land of Haynes, with the title of Haynes, simply, and he is of course the privy of Haynes, as to that, and not of Choice, Harbin & Co., to whom the money goes. If Choice, Harbin & Co. had purchased the slaves at a sale under their own execution, and Crutchfield had brought detinue, instead of making it a claim suit, on the occasion of the levy, and the former had defended on the ground that the deed in trust was fraudulent, the identical question as to the *bona fides* of the deed would have been adjudicated in that suit, that was in the claim suit. But how would Choice, Harbin & Co. have defended in such suit? under whose title would they have rested? in other words, whose privies were they, in respect to the title to these slaves? Undoubtedly under the title of Haynes, and as the privies of Haynes. If the case had been so, that is, if Choice, Harbin & Co. had purchased under their own execution, then they would have stood in the very predicament in respect to Crutchfield in the detinue suit, that Hudson occupies towards Crutchfield in this ejectment: —both purchasers under the Choice, Harbin & Co. judgment, and both assailing the deed in trust on the ground of fraud.— But it has been clearly shown, that, in that suit, Choice, Harbin & Co. were the privies of Haynes, and how then can it be insisted that in this suit Hudson is the privy of Choice, Harbin & Co? The proposition exposes its own fallacy. If Choice, Harbin & Co. were the privies of Haynes in defending the title

48

to the slaves they purchased, then must Hudson be the privy of Haynes also, in deducing title to the land which he purchased. In respect to each and both the title is good, if the deed in trust was void for fraud; but they do not occupy such a relation to each other that a judicial decision of that question in favor of one, can be invoked by the other; because, as shown, they are not privies.

Try it by what the law considers a good test. A judicial decision binds both the parties and their privies, *sit finis litium;* both are forever concluded by it. Therefore, where A claims that B is estopped, concluded, by a judicial decision, the first question that arises is, had the decision been adverse to B, would he have been estopped, concluded, by it? for an estoppel, to be really and truly so, must be mutual, must bind both. If B would have been concluded, then A is so; if not, then A is not, and the question as to A and B is not *res adjudicata*.

" It is a general rule, that a verdict shall not be used as evidence against a man, where the opposite verdict would not have been evidence for him; in other words, the benefit to be derived from the verdict must be *mutual.*"—1 Starkie's Ev. 196.

" Where the parties are not the same, one who would not have been prejudiced by the verdict, cannot afterwards make use of it, for, as between him and a party to such verdict, the matter is *res nova*, altho' his title turn upon the same point."— *Ib.* 197.

We do not think it can be insisted, that a verdict in favor of Crutchfield in the claim suit about the slaves with Choice, Harbin & Co., would have bound Hudson. He was no party; had no opportunity to be heard; and how then could his rights be affected? He was not bound; then neither is Crutchfield bound, as respects him.

That Hudson was not examined as a witness in the claim suit about the slaves, makes no difference. This is not the kind of case in which that circumstance is allowed to have any weight. Where a man gives evidence for the State in a criminal prosecution, and may thereby help to make the verdict turn a particular way, he will not be allowed afterwards to use that verdict, although otherwise he might, in a civil action.—Maybee v. Avery, 18 Johns. 352.

This disposes of the question relating to the judgment in the Choice, Harbin & Co. suit, and its nature and effect.

The position assumed by plaintiffs in error, that Hudson could not assail the deed in trust for fraud, because he was one of the creditors secured by it, and had received a *pro rata* share of the proceeds of the sale of the property conveyed by it, we do not consider tenable. It seems he was secured to some small amount, and received his *pro rata* share. That circumstance may have been proper to go to the jury for what it was worth, on the question of the *bona fides* of that deed, but the act of receiving his *pro rata* share worked no estoppel upon Hudson. The only sort of act that could estop him as to the *bona fides* of that deed, must have been one which induced the party with whom he was contending to place reliance on the deed as a good security, when it was not, by confiding in his acts or declarations. Nothing of this sort can be pretended, as between Hudson and Crutchfield, in relation to this deed. As to estoppels *in pais*, see Pickard v. Lears, 33 Con. Eng. C. L. R. 115.

We come then to the conclusion, that the court below erred in admitting the record of the verdict and judgment in the case of Crutchfield v. Choice, Harbin & Co., and proof that the question of *fraud vel non* as to the deed of trust was submitted and decided in that action; and also in the instruction that was given as to the effect of that judgment. The testimony should have been excluded for irrelevancy, and that, of course, would have left no room for instructions as to its effect.

The question raised in this case, as to the proper course to be taken in the revival of ejectments suits, where the defendant dies pending the action, was fully considered and settled at the last term of this court, in the case of Swan v. Driver's Heirs. See p. 192. It was there decided to be proper, under our system, to revive both against the heirs and personal representative, as was done in this case, so that the plaintiff, if he recovers, may take his judgment against the heirs for the land, and against the executor or administrator for the damages assessed as mesne profits and the costs.

For the errors aforesaid the judgment below is reversed, and the cause remanded.